**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 16 2012, 8:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**E. SCOTT TREADWAY**
EST Law, LLC
Carmel, Indiana

ATTORNEY FOR APPELLEE:

**CHRISTOPHER T. SMITH**
Smith Davis LLC
Greenfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE MARRIAGE OF:            )
                                  )
Am.C.,                            )
                                  )
    Appellant-Petitioner,         )
                                  )
      vs.                       )    No. 30A05-1109-DR-456
                                  )
                                  )
D.C.,                             )
    Appellee-Respondent.          )

APPEAL FROM THE HANCOCK SUPERIOR COURT
The Honorable Terry K. Snow, Judge
The Honorable R. Scott Sirk, Commissioner
Cause No. 30D01-0807-DR-771

**May 16, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Am.C. ("Mother") appeals the trial court's order related to the custody and support of C.C. and As.C., the children of Mother and D.C. ("Father"). Mother raises six issues, which we consolidate and restate as whether the trial court erred or abused its discretion in denying Mother's petition to modify the decree of dissolution of marriage. We affirm and remand.

The relevant facts follow. Mother and Father were married in October 2002 and have two children together, C.C. and As.C., both born on May 3, 2006. A decree of dissolution of marriage was entered in September 2008. Pursuant to the decree, which incorporated a voluntary settlement agreement between the parties, Mother and Father were granted joint legal and physical custody of the children. Paragraph 4 of the settlement agreement provides:

> Child Custody & Parenting Time. The parties agree that the parties shall have joint physical custody and joint legal custody of the minor children, [C.C. and As.C.]. The parties agree that they shall alternate having [C.C. and As.C.] in their care on a weekly basis. [Mother] shall have [C.C. and As.C.] from the Sunday following the Court's Final Decree of Dissolution at 4 p.m, for one week, terminating the next Sunday at 4 p.m. Father shall then have [C.C. and As.C.] for one week (Sunday 4 p.m. through the following Sunday at 4 p.m.) following Mother's one week term. The Parties shall continue this one week pattern from Sunday at 4 p.m. until the following Sunday at 4 p.m. until such time as this Court would see fit to modify this agreement.
>
> The parties agree to modify this agreement regarding custody and child support prior to [C.C. and As.C.] starting kindergarten.

Appellant's Appendix at 17. The settlement agreement further provided that Father agreed to pay Mother sixty-five dollars per month in child support, and that Mother would pay the first fifty-six percent and Father would pay forty-four percent of all educational expenses incurred by C.C. and As.C.

On October 28, 2010, Mother filed a petition to modify the decree in which she stated that the parties' children would be starting kindergarten in the fall of 2011 and that a decision must be made regarding full-time custody and school selection. Mother stated that she lived in Fishers, Hamilton County, Indiana, and that Father lived in Greenfield, Hancock County, Indiana. Mother stated that she had remarried and believed that C.C. and As.C. should attend school in the Hamilton Southeastern School District where Mother resided. Mother requested physical custody of C.C. and As.C., an order that the children attend Hamilton Southeastern Schools, and an order modifying child support consistent with the modified custody arrangements.

The court held a hearing on Mother's petition on June 13, July 6, and August 10, 2011. On August 11, 2011, the court entered its findings of fact, conclusions of law, and judgment and final order in which it denied Mother's request to modify custody or support, found that the court was without discretion to give legal effect to the provision contained in paragraph 4 of the settlement agreement which arguably allowed for an automatic change of custody based on the children's age and did not contain a discussion of the best interests finding required by Ind. Code § 31-17-2-21(a), ordered that the parties continue to share joint legal and physical custody, ordered that the parties' children attend kindergarten in the Mt. Vernon School District[1] commencing with the fall 2011 semester and that the parties share equally the cost of any tuition payments, and ordered Mother to pay fifty-six percent and Father to pay forty-four percent of any extracurricular expenses. Mother now appeals.

---

[1] The order specifically stated that "[t]he children shall attend kindergarten at Mt. Comfort Elementary in the Mt. Vernon School District . . . ." Appellant's Appendix at 13.

3

The issue is whether the trial court abused its discretion in denying Mother's petition to modify decree of dissolution of marriage. We review custody modifications for an abuse of discretion and have a "preference for granting latitude and deference to our trial judges in family law matters." Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002). "We set aside judgments only when they are clearly erroneous, and will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." Id. The Indiana Supreme Court explained the reason for this deference in Kirk:

> While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

Id. (quoting Brickley v. Brickley, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)). Therefore, "[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." Id. In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent modification bears the burden of demonstrating that the existing custody arrangement should be altered. Webb v. Webb, 868 N.E.2d 589, 592 (Ind. Ct. App. 2007). We may neither reweigh the evidence nor judge the credibility of the witnesses. Fields v. Fields, 749 N.E.2d 100, 108 (Ind. Ct. App. 2001), trans. denied.

Where a trial court enters findings of fact and conclusions of law, first we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. In re Guardianship of Phillips, 926 N.E.2d 1103, 1106-1107 (Ind. Ct. App. 2010). We will set aside the trial court's specific findings only if they are clearly erroneous, that is, when there are no facts or inferences drawn therefrom to support them. Julie C. v. Andrew C., 924 N.E.2d 1249, 1255-1256 (Ind. Ct. App. 2010). A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. Norris v. Pethe, 833 N.E.2d 1024, 1032-1033 (Ind. Ct. App. 2005). We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. Id. The specific findings control only as to the issues they cover, and a general judgment standard applies to issues upon which the trial court made no findings. In re Guardianship of Phillips, 926 N.E.2d at 1107. We review questions of law *de novo* and owe no deference to the trial court's legal conclusions. Id.

The child custody modification statute provides that "[t]he court may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one or more of the factors that the court may consider under" Ind. Code § 31-17-2-8. Ind. Code § 31-17-2-21. Ind. Code § 31-17-2-8 lists the following factors:

(1)     The age and sex of the child.

(2)     The wishes of the child's parent or parents.

5

(3)    The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4)    The interaction and interrelationship of the child with:

   (A)    the child's parent or parents;

   (B)    the child's sibling; and

   (C)    any other person who may significantly affect the child's best interests.

(5)    The child's adjustment to the child's:

   (A)    home;

   (B)    school; and

   (C)    community.

(6)    The mental and physical health of all individuals involved.

(7)    Evidence of a pattern of domestic or family violence by either parent.

Mother essentially argues that the court erred in failing to award her custody of the parties' children, in failing to order that the children attend a school in the Hamilton Southeastern School District, and in ordering her to pay a portion of the fee associated with the children's enrollment in the Mt. Vernon School System.

Custody Determination

Mother points to paragraph 4 of the settlement agreement and argues that "[i]n this case, the existing custody order provided for a change in custody when the Children reached kindergarten," that "[t]hat requirement was deemed to be in the Children's best interest in 2008," and that "[t]here was no evidence offered that conditions had changed

6

justifying a change in that Order." Appellant's Brief at 32. Mother asserts that the court's order "says little as to why this critical provision of the original Decree was unceremoniously cast aside." Id. She argues that "[i]n the present case, custody was already determined to change to one parent when the Children reached school age, shifting away from alternating weeks," that "while the original Decree and Agreement could have been more artfully crafted, that is not a reason to jettison the same," and that "the Trial Court simply excised that provision of a freely negotiated settlement agreement which was a fundamental part of the Decree relied upon by Mother." Id. at 33-34. Mother states that the court's finding that the parties are able to communicate and make effective decisions is clearly erroneous and not supported by any interpretation of the evidence, and that, in fact, the opposite is true and that Father interferes with her ability to parent at every available opportunity.

Father's position is that the court's finding that it is not bound by the parties' agreement in paragraph 4 related to a future custody modification is consistent with Indiana case law. Father further argues that the court did not abuse its discretion in refusing to modify custody, that there was little evidence presented that would support a change in physical custody, that there was testimony from Father that the children benefited from following their present schedule, and that Mother's contentions in support of a modification of joint legal custody focused on Father being confrontational and his desire to be in control but that any such occurrences were at best isolated incidents and that the evidence is replete with evidence of Mother and Father resolving most of their disputes by agreement. In her reply brief, Mother argues that Father's claim that he and

7

Mother co-parent well was contradicted by the great weight of the evidence, that the evidence did not support the court's findings, and that the court failed to consider the best interests of the children.

With respect to the parties' arguments related to paragraph 4 of the settlement agreement, we observe that paragraph 4 states the parties' agreement to joint legal and physical custody and that they would alternate care of the children on a weekly basis. The last sentence of paragraph 4 provides: "The parties agree to modify this agreement regarding custody and child support prior to [C.C. and As.C.] starting kindergarten." Appellant's Appendix at 17. We observe that paragraph 4 does not specifically identify the custody modification which the parties agreed would occur when the children started kindergarten, and the last sentence of the paragraph appears to consist of an "agreement to agree" which we cannot enforce. See Wolvos v. Meyer, 668 N.E.2d 671, 674 (Ind. 1996) (noting that "[t]he law is well established that a mere agreement to agree at some future time is not enforceable"). In addition, this court has noted that those portions of a settlement agreement between divorcing parties which are made in the interest of the support or custody of a child cannot be shielded from the trial court's fulfillment of its duty to consider the best interests of the child. See Mundon v. Mundon, 703 N.E.2d 1130, 1136 (Ind. Ct. App. 1999) (observing that "[d]ivorcing parties are free to anticipate many future events and contingencies in maintenance and property agreements, to declare that alternate terms will 'automatically' come into effect upon the occurrence of those events, and even to agree that their agreements shall be shielded from judicial modification without their agreement to such modification. But where provisions are

8

made in the interest of the support and custody of children, as opposed to those which merely set forth rights in property, our legislature and sound public policy dictate that the trial court must play a role, and a settlement agreement cannot be shielded from or circumvent the court's fulfillment of that duty"). We cannot say that the court's findings as to paragraph 4 of the parties' settlement agreement constitutes reversible error.

With respect to the court's order declining to modify legal or physical custody, the court set forth Ind. Code § 31-17-2-21 and concluded that "there has been no substantial and continuing change in any of the factors listed in I.C. 31-17-2-8 or I.C. 31-17-2-15, and a modification of custody is not in the best interests of the children." Appellant's Appendix at 12. The court found that "[t]here is no evidence that the children are not well adjusted to the division of parenting time agreed to by the parties after their separation" and that "since [the children] were only a few months old, they have attended daycare or school outside of each party's home while in each party's care . . . ." Id. at 9.

A number of Mother's arguments essentially request that we reweigh the evidence and judge the credibility of the witnesses, which we cannot do. See Fields, 749 N.E.2d at 108. In support of her request for custody modification, Mother testified that the children were preparing to enter school and that she believed that she and her current husband provided the most stable and consistent environment for the children. Mother testified regarding her concerns related to Father's behavior, including Father using school as a bartering tool to let Mother take the children on a family vacation, Father's arguments with Mother in front of the children, Father's failure to give the children medicine which they had been prescribed, and the inability of Mother and Father to make decisions or

9

reach agreements on certain issues. Mother further testified that she believed it was important for the children to reside in one residence when they attended school for the stability of the children's schedule, transportation, and extracurricular activities. Father testified that the children have adjusted very well to the current custody arrangement and that the children's schedules with Mother and Father are similar. Father testified that he and Mother had reached an agreement regarding the children going to the pediatrician, for the exchange of clothing when transferring the children to each other, and for the children to play soccer in McCordsville, Indiana, with Father and Mother or Mother's current husband alternating with coaching assistance every other week. Father testified that he and Mother had agreed to exchange the children with only parents present when possible and to sharing certain expenses associated with extracurricular activities.

Based upon the evidence in the record and the court's findings, there is support for the court's order and we cannot say that the court abused its discretion in denying Mother's request to modify custody. See Cunningham v. Cunningham, 787 N.E.2d 930, 936-937 (Ind. Ct. App. 2003) ("Acknowledging the high degree of deference we must give to the trial court's decision, we conclude that the trial court did not err when it denied Father's petition to modify custody.").

<u>School Enrollment and Expenses</u>

Mother further argues that the court erred in failing to order that the children attend a school in the school district in which she resides and ordering her to pay a portion of the tuition for the children's current school. Mother argues that the court did

10

not follow Ind. Code § 31-16-8-1[2] or Ind. Code § 31-16-6-2[3] in ordering her to pay tuition and that Father offered no evidence of a change in circumstances. Mother further argues that she offered substantial evidence to support a finding that an order for the

[2] Ind. Code § 31-16-8-1 provides:

(a)     Provisions of an order with respect to child support . . . may be modified or revoked.

(b)     Except as provided in section 2 of this chapter, modification may be made only:

   (1)     upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

   (2)     upon a showing that:

      (A)     a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

      (B)     the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

[3] Ind. Code § 31-16-6-2(a) provides in part:

The child support order or an educational support order may also include, where appropriate:

(1)     amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account:

   (A)     the child's aptitude and ability;

   (B)     the child's reasonable ability to contribute to educational expenses through:

      (i)     work;

      (ii)     obtaining loans; and

      (iii)     obtaining other sources of financial aid reasonably available to the child and each parent; and

   (C)     the ability of each parent to meet these expenses . . . .

11

children to attend school in the Hamilton Southeastern School District was in the best interest of the children and that the court did not articulate why it rejected her undisputed evidence. Mother also argues that the court's order is devoid of any reference to or consideration of the Indiana Child Support Guidelines (the "Support Guidelines"). Father argues that the court did not abuse its discretion in ordering the parties to split the cost to attend McCordsville Elementary School. Father argues that the tuition payment to attend the school was not tuition or a fee for out-of-district children but instead a fee for the children to attend full-day kindergarten, which was available only at McCordsville Elementary. In her reply brief, Mother asserts that Father "cites to no legal authority even remotely suggesting that a trial court has the discretion to order the children to attend a statistically inferior public school at a high tuition because of parental driving convenience when neither parent resides in that district." Appellant's Reply Brief at 10-11.[4]

At the hearing Mother requested that the children attend Hoosier Road Elementary in the Hamilton Southeastern School District, and Father requested the children attend McCordsville Elementary in the Mt. Vernon School District. Mother indicated that she did not believe it would be good for the children to attend a school in a district in which neither parent resides, that extracurricular activity and transportation issues would arise, and that she did not think it was smart for the children to attend a school where they had no involvement in the community. Mother testified that she researched Hoosier Road

---

[4] Mother also argues that the trial court's order that she pay for a portion of the children's kindergarten expense violates her rights under Article 8, Section 1 of the Indiana Constitution. The constitutionality of a charge or sum assessed by a school for a child to attend full-day kindergarten is essentially a school funding issue, and the school is not a party to this case. Mother raises this issue in an improper context and we decline to address it.

Elementary, McCordsville Elementary, and Eden Elementary in the Greenfield School District. She testified that she reviewed the schools' ISTEP scores, graduation and attendance rates, and other data. Mother testified that she visited the Hamilton Southeastern school and obtained information, but did not take the children with her so that they would not be confused, and that, over her objection, Father took the children to the Mt. Vernon school to register them. Mother stated her belief that Hamilton Southeastern is unique, is rated very well in terms of class sizes and ratios, graduation rates, and ISTEP scores, and that Hoosier Road Elementary was significantly better in all categories and was located only about a third of a mile from her home. Mother also testified that she was able to visit each classroom and speak with the teachers and the principal.

Father testified that he lived in the Greenfield Central Schools system, that he and Mother had previously agreed that the children would attend school in the Mt. Vernon School System, and that Mother had just recently changed her mind on the issue. Father testified that he had gone to Greenfield Central which was close to Mt. Vernon Schools, knew people that went to Mt. Vernon Schools, and did not have a concern regarding the details of the school. Father testified that he wanted his children to attend full-day kindergarten and that his research indicated they could not do so at Hoosier Road Elementary. When asked if he had raised that issue a single time prior to his testimony or in his deposition, Father stated that he had previously mentioned that he would like for the children to go to full-day kindergarten. Father testified that he feels like he spends more time working on the children's education and that McCordsville Elementary was a

good compromise. He stated that he maintains 529 accounts for each of the children and also custodial brokerage accounts in their names. Father testified that some of the information that he researched showed that standardized test scores at Mt. Vernon were trending upward, and that he had recently looked up McCordsville Elementary and that it had fewer students per class than Hoosier Road Elementary. Father also testified he had concerns with Hamilton Southeastern about class size, bullying, and competition for programs.

Based upon the record, we cannot say that the trial court erred or abused its discretion in denying Mother's request that the children be enrolled in kindergarten at Hoosier Road Elementary or in ordering that the children be enrolled at McCordsville Elementary.

With respect to the expense associated with the children's enrollment in kindergarten, Father testified that he paid $2,300 as an annual fee for the children to enroll for kindergarten at McCordsville Elementary. Father further testified that he did not think there was an additional fee at the school for out-of-district children, that it was his understanding that there was not a tuition for children older than kindergarten, and that the only reason he was paying for kindergarten was because they were enrolled for full-day kindergarten. When asked whether she had indicated that, considering the amount of money she spent on daycare, she was agreeable to pay tuition for the children to attend kindergarten, Mother responded "Yes." Transcript at 182.

We observe that a court may order educational support where appropriate for a child's education in elementary school taking into account the child's aptitude and

14

ability, the child's reasonable ability to contribute to educational expenses, and the ability of each parent to meet the expenses. See Ind. Code § 31-16-6-2. In addition, we note that Support Guideline 8 provides that "[e]xtraordinary educational expenses may be for elementary, secondary or post-secondary education, and should be limited to reasonable and necessary expenses for attending private or special schools, institutions of higher learning, and trade, business or technical schools to meet the particular educational needs of the child." Subsection (a) of Support Guideline 8 provides that "[i]f the expenses are related to elementary . . . education, the court may want to consider whether the expense is the result of a personal preference of one parent or whether both parents concur," whether the "parties would have incurred the expense while the family was intact," and whether "education of the same or higher quality is available at less cost."

Based upon the record, Ind. Code § 31-16-6-2, and Support Guideline 8 we cannot say that the trial court abused its discretion in ordering Mother to pay one-half of the payment associated with the children's enrollment in full-day kindergarten at McCordsville Elementary.

To the extent Mother requested in her petition that the court modify Father's support obligation "consistent with the modified custody arrangements," see Appellant's Appendix at 37, we note that the court did not grant Mother's request regarding custody or corresponding request to modify Father's support obligation. Mother does not expressly argue on appeal that the court erred in failing to modify Father's support obligation notwithstanding its decision not to grant Mother full-time physical custody.

Finally, we note that Mother argues that the court failed to identify Mt. Comfort Elementary rather than McCordsville Elementary as the school at which the children are enrolled as Father responds that "[t]hroughout the lengthy contested hearing in this matter there were occasional references to 'Mt. Comfort Elementary,'" that "[i]t is clear, however, from the testimony that the school at issue was 'McCordsville Elementary,'" and that "[t]he Court's mistake in naming the school at issue is obvious and causes no confusion regarding the Court's ruling." Appellee's Brief at 14. We remand with instructions for the court to revise its order to correctly reflect the name of the school the children attend in the Mt. Vernon School District.

For the foregoing reasons, we remand with instructions for the court to revise its order to correctly reflect the name of the school which the children attend. In all other respects, we affirm the trial court's August 11, 2011 order.

Affirmed and remanded.

BAKER, J., and KIRSCH, J., concur.

16